The OLD FOLKS MISSION CENTER, et al., Plaintiffs-Appellees,

v.

Rev. Tommie McTIZIC, et al., Defendants-Appellants.*

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 18, 1981.

Permission to Appeal Denied by Supreme Court April 5, 1982.

David O. Kemp, Bolivar, for defendants-appellants.

Melvin L. Rowland, Jackson, for plaintiffs-appellees.

MATHERNE, Judge.

The plaintiff, The Old Folks Mission Center (mission), brought suit for declaratory judgment as to the validity of two notes executed by the board of directors of the mission in favor of the Rev. Tommie McTizic and J. E. Poindexter and secured by deeds of trust on the mission property. The chancellor held the notes and deeds of trust to be illegal and unenforceable. The Rev. McTizic appeals that decision.

---

* This opinion, with the consent of the other judges on the panel, has been edited for publication.

The Old Folks Mission Center is a nursing home established in the early 1960's by a group of black ministers as a non-profit corporation. The by-laws established a class of membership made up of all member churches of the mission who paid the $200.00 joining fee and annual dues and who were in good standing. Each member church was afforded one vote in all membership meetings, and each sent one representative to serve on the board of directors.

The Rev. McTizic, representative of Zion Temple, was a member of the initial eighteen-member board of directors and superintendent of the facility for eight years, 1964–72. J. E. Poindexter was the secretary-treasurer, and the Rev. U. R. Lewis was president.

In 1969, the board of directors of the mission passed a resolution and executed three notes and deeds of trust on the mission property to McTizic, Poindexter, and Lewis, presumably as compensation for their services to the mission. This lawsuit centers upon the $4,000 note to McTizic and the $3,400 note to Poindexter each of which bears 6% interest per annum after default. The Poindexter note has been assigned to McTizic with some dispute over whether any money changed hands. McTizic testified that he paid $1,500 for the Poindexter note, while Poindexter denied receiving any compensation for it.

Of the eighteen board members of the corporation on May 1, 1969, when the resolution to compensate McTizic and Poindexter was passed, only seven were alive at the time of the trial. Four were able to testify, two of the four being Poindexter and McTizic. C. H. Murphy, one of the original directors who did appear at the trial, testified that the notes and deeds of trust to Poindexter and McTizic were approved at a board meeting. Amos Freeman also testified that the board, of which he was an original member, adopted a resolution acknowledging the trust deeds. Freeman's testimony is, however, filled with inconsistencies—for example, he once states that McTizic was never promised compensation for his services and at another point testifies that there was such a promise to pay.

McTizic testified that he received very little compensation for his service as superintendent prior to the 1970's, but the board promised to pay him if the corporation ever acquired sufficient funds. At trial McTizic denied getting any checks as payment for his service. When confronted with several thousand dollars in cancelled checks, some of which bore his name on the front and indorsement on the back, some of which were labelled "donation," he first said, "it must have been something I give."

In 1975 there was a complete change in the personnel of the board of directors, and the old board was voted out. According to Forestine Cherry, plaintiff and superintendent of the mission since July 1972, the notes and deeds of trust to McTizic were not challenged before this suit was initiated on June 8, 1977, because there were two other notes to be paid off before his was due. The financial records of the mission as filed by McTizic did not indicate any debt was owed to him as the former superintendent. Suit was filed by the mission seeking a declaratory judgment on the validity of the notes and trust deeds after McTizic's attorney sent a letter to the mission threatening foreclosure.

The chancellor found the deeds of trust and promissory notes to be illegal and void—the results of ultra vires acts of the directors and that the deeds of trust and promissory notes were never legally authorized by the corporation.

■ We affirm the chancellor in his finding that the deeds of trust and promissory notes were never legally authorized. The alleged authorization of the notes and deeds by resolution approved by the board of directors does not meet the standard of T.C.A. 48–907(3) which governs the sale, mortgage, or pledge of all or substantially all of the properties and assets of a corporation not for profit.

48–907(3) Any other sale (whether for cash or for securities of the purchasing corporation or otherwise) or any other lease or exchange of all or substantially

all of the property of a corporation for profit or any sale, lease, exchange, mortgage, pledge or other disposition of all or substantially all of the property and assets of a corporation not for profit (which may be made in whole or in part for money or property, real or personal, including shares of any corporation for profit, domestic or foreign) shall be authorized by the shareholders or members in the following manner:

(a) The board shall adopt a resolution recommending such transaction and directing that the question of such transaction be submitted to a vote at a meeting of shareholders or members, which may be either an annual or a special meeting;

(b) Written notice of the meeting, pursuant to § 48–703, shall state that the purpose or one (1) of the purposes of the meeting is to consider the proposed transaction. If the transaction would give rise to a dissenter's right of payment for his shares under § 48–909, such notice shall also be given pursuant to § 48–704; ...

No written notice was given of the meeting to consider the resolution, no membership meeting was held for that purpose, and there was no affirmative vote by a ⅔ majority of the votes which members present or represented at such meeting are entitled to cast. Subsection (3)(c). While the board did adopt resolutions to compensate McTizic and Poindexter, those resolutions were not that specific. They did not authorize the giving of notes and trust deeds on mission property, neither did they enumerate the installments or give the amount to be paid in each installment.

McTizic correctly points out Article II Section I of the by-laws divides members into two classes—"active members" and "sustaining members." The active members are the original incorporators, and these are the voting members. The sustaining members are churches, organizations, companies, or individuals who contribute to the support of the mission, and these are non-voting members. McTizic contends that since the 1969 board of directors and the body of voting members was one and

the same, T.C.A. § 48–907(3) was fully complied with. His argument fails because board meetings do not meet the standard for members meetings as established by Article III of the by-laws. Member meetings are held at the regularly scheduled February meeting time and at special meetings. Article III Section 3 specifies that in the case of a membership meeting required by statute, written notice of the meeting and the purpose should be sent to each voting member. No attempt was made to comply with either the notice requirement of the by-laws or of T.C.A. 48–907(3)(b).

It is clear to this court that the notice provision of 48–907(3) was intended to provide the members with knowledge of the transaction which was a pledge of substantially all the corporate assets. Having failed to satisfy the notice provision, the board failed to legally adopt the resolution. On this point, we affirm the chancellor.

■ McTizic contends that the chancellor erred when he declared the notes and trust deeds to be the result of ultra vires acts of the defendants. According to McTizic, an act cannot be ultra vires or "beyond the power" of a corporation when the act is specifically authorized by the corporate charter and by-laws. The by-laws of 1964 expressly provide that the board of directors will employ a superintendent; both the original and amended charters authorized the mortgage of corporate property; and the by-laws give the board authority "to borrow money when necessary in the conduct of the business of the corporation and to give security for same." We agree with McTizic's insistence and reverse the chancellor on this point; the notes and trust deeds were not the result of ultra vires acts.

■ McTizic further insists that corporate transactions in which officers have an interest are not voidable if the transaction falls within one of the three provisions of 48–816(1):

48–816. Corporate transactions in which directors or officers have an interest.—(1) Except as otherwise provided in § 48–814, no transaction in which a director or officer has a personal or adverse interest

shall be void or voidable solely for this reason or solely because he is present at or participates in the meeting or his vote is counted: if

(a) The material facts as to his interest and as to the transaction are disclosed or are known to the board or committee and the fact of such interest is noted in the minutes, and the board or committee authorizes, approves or ratifies the transaction by a vote sufficient for such purpose without counting the vote of the interested director or directors; or if

(b) The material facts as to his interest and as to the transaction are disclosed or are known to the shareholders or members and the transaction is specifically approved by vote of the shareholders or members without counting the votes of any shares owned or controlled by the interested director or officer or the vote of the interested director or officer if he is a member; or if

(c) The transaction is fair and equitable as to the corporation at the time it is authorized or approved, and the party asserting the fairness of the transaction establishes fairness.

According to McTizic, the transaction involved in this lawsuit satisfies both 48–816(1)(a) and 48–816(1)(c). There is no merit to either contention. Provision (1)(a) requires disclosure of material facts and notation of the disclosure in the minutes. McTizic at all times falsely represented that he had received no compensation for his services. The minutes contain no disclosure. Indeed, he maintained the pretense that he received no pay until he was confronted with cancelled checks during the trial, and even then, he suggested "somebody is trying to pull one over on old Tom." Indeed, some checks made out to him and indorsed by him but designated "donation," he suggested were his donations to the mission. In view of McTizic's active fraud, it is impossible for him to comply with section 48–816(1)(c) by proving fairness of the transaction. By definition active fraud undermines any pretense of fairness. We affirm the chancellor's finding that the notes and deeds of trust were never legally adopted by the corporation.

For the reasons herein stated, the judgment of the chancellor is affirmed. The cost in this court is adjudged against the defendant-appellant for which execution may issue, if necessary.

NEARN and SUMMERS, JJ., concur.